UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GEZA TOTH on behalf of T.T.,

               Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

               Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

14-cv-3776 (SLT) (JO)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 0 9 2017 ★

BROOKLYN OFFICE

**TOWNES, United States District Judge:**

On June 11, 2014, Plaintiff Geza Toth filed a complaint, *pro se*, on behalf of his minor

son, T.T., alleging that Defendant New York City Department of Education failed to provide

T.T. with a "free appropriate public education" as required under the Individuals with

Disabilities Education Improvement Act ("IDEA"), 42 U.S.C. §§ 1400 *et seq.* (Compl., ECF No.

1.) Defendant moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and (h)(3) for lack of subject-matter jurisdiction on the grounds that Plaintiff's claims

are moot or, alternatively, pursuant to Federal Rule of Civil Procedure 12(c) for failure to state a

claim. (ECF No. 38.) Plaintiff opposed the motion and cross-moved to amend the Complaint.

(ECF Nos. 39, 42.) On August 27, 2015, this Court referred both motions to United States

Magistrate Judge James Orenstein ("Judge Orenstein") for a report and recommendation. (ECF

No. 47.)

On March 14, 2016, Judge Orenstein issued a Report and Recommendation (the "R&R")

recommending that Defendant's motion be granted to the extent that it seeks dismissal for lack of

subject-matter jurisdiction and Plaintiff's cross-motion to amend the Complaint be denied. (ECF

No. 48.) On April 9, 2016, Plaintiff filed objections to the R&R ("Objections"). (ECF No. 56.)

Plaintiff's Objections are without merit. Accordingly, the Court adopts the R&R in its entirety.

# BACKGROUND

## I.    STATUTORY FRAMEWORK

Any state that receives IDEA funding must provide all disabled children with a "free

appropriate public education." 20 U.S.C. § 1412(a). "A free appropriate public education

["FAPE"] must include special education and related services tailored to meet the unique needs

of a particular child, and be reasonably calculated to enable the child to receive educational

benefits." *C.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 71-2 (2d Cir. 2014) (citations

omitted). "The key element of the IDEA is the development of an IEP [individualized education

program] for each handicapped child, which includes a comprehensive statement of the

educational needs of a handicapped child and the specially designed instruction and related

services to be employed to meet those needs." *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d

Cir. 2006) (internal quotation marks and citation omitted); *see* 20 U.S.C. § 1414(d).

"New York parents who disagree with their child's IEP may challenge it in an impartial

due process hearing, … before an IHO [impartial hearing officer] appointed by the local board of

education, …." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107 (2d Cir. 2007) (citing

20 U.S.C. § 1415(f), N.Y. Educ. Law § 4404(1)).  Parents can appeal the IHO's decision to a

state review officer ("SRO") and challenge the SRO's decision in a state or federal lawsuit. *Id.*

(citing 20 U.S.C. § 1415(g) and (i)(2)(A), N.Y. Educ. Law § 4404(2)).  Parents must exhaust the

administrative review process before raising IDEA claims in a state or federal lawsuit. *Cave v.*

*East Meadow Union Free Sch. Distr.*, 514 F.3d 240, 245 (2d Cir. 2008) ("[o]nly after exhaustion

of these procedures has an aggrieved party the right to file a suit in a federal or state court")

(citing 20 U.S.C. § 1415(i)(2)(A)). "Failure to exhaust the administrative remedies deprives the

court of subject matter jurisdiction." *Id.* (citations omitted).  A party need not exhaust

administrative remedies only if the party can show that "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Centr. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002) (J. Sotomayor) (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985))).

The IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child ...." 20 U.S.C. § 1415(j). Section 1415(j) is commonly referred to as the pendency provision. A party need not administratively exhaust a claim alleging violation of the pendency provision. *Murphy*, 297 F.3d at 199-200; *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015).

## II.    FACTS

These facts are drawn from the Complaint, the sealed record of the administrative proceedings, and exhibits filed in support of the motions currently in front of the Court. T.T. was born on October 2, 2007. (Compl. ¶ 7.) On June 10, 2010, he was diagnosed as autistic; his diagnosis is not in dispute. (*Id.* at ¶ 8.)

T.T. subsequently received ABA therapy.[1] From June 2010 to August 2011, he received 20 hours of therapy a week. (*Id.*) Starting August 2011, that number was reduced to 10 hours a week. (*Id.*) From July 2011 through August 2012, he attended a private school with "ABA

---

[1]    "ABA" refers to applied behavior analysis which "focuses on the principles that explain how learning takes place. Positive reinforcement is one such principle. When a behavior is followed by some sort of reward, the behavior is more likely to be repeated.... Applied behavior analysis (ABA) is the use of these techniques and principles to bring about meaningful and positive change in behavior." https://www.autismspeaks.org/what-autism/treatment/applied-behavior-analysis-aba

trained teachers" and was progressing well. (*Id.* at ¶ 10.) But when he aged out, his parents placed him in public school beginning in September 2012. (*Id.* at ¶ 12; Sept. 3, 2013, administrative hearing transcript at 193.) He was placed in a 6:1:1 classroom (Sept. 18, 2013, administrative hearing transcript at 406), which means that there was a teacher and an aide attending to six students. However, T.T. did not perform well in that setting. By June 2013, the school informed his parents that his behavior was unmanageable, that he was simply staring at the ceiling during class, and that he was "not learning anything ...." (Compl. ¶ 20; Sept. 3, 2013, administrative hearing transcript at 193.)

The IEP that Defendant formulated for T.T. commencing December 28, 2012 provided that he continue in the 6:1:1 public classroom, but it did not call for any ABA therapy. (Pl. Opp. Memo. of Law,[2] Decl. of Dr. Karen M. Hopkins, Ex. A at 9; Compl. ¶ 18.) The projected date of the IEP's next review was December 11, 2013. (*Id.* at 1.) In January 2013, T.T.'s parents filed a "due process complaint." In March 2013, Plaintiff and Defendant entered into a Resolution Agreement whereby: (i) Defendant would provide for 10 hours of SETSS[3] therapy from July 5, 2013, through January 31, 2014, and (ii) by January 1, 2014, Defendant would "consider" at-home SETSS services for the rest of the 2013-14 school year. (*Id.* at ¶ 19; PX[4] E and I.) T.T. was still attending public school.

On June 28, 2013, T.T.'s parents filed another due process complaint seeking a placement at the Brooklyn Autism Center ("BAC") and an increase in T.T.'s at-home therapy

---

[2]    "Pl. Opp. Memo. of Law" refers to the Memorandum of Law in Opposition to Respondent's Motion to Dismiss. (ECF No. 39).

[3]    SETSS refers to "Special Education Teacher Support Services[.]" http://schools.nyc.gov/Academics/SpecialEducation/programs/environment/setss.htm

[4]    "PX" refers to any Exhibit offered by Plaintiff that is part of the administrative proceedings record.

from 10 hours to 15 hours a week. (PX A at 1.) On December 1, 2013, the IHO denied Plaintiff's claim and, on February 12, 2014, the SRO affirmed that decision. (Compl. ¶¶ 27, 28.)

The IEP commencing January 1, 2014 continued to place T.T. in a 6:1:1 public school classroom with no SETSS services. (Pl. Opp. Memo. of Law, Decl. of Dr. Karen M. Hopkins, Ex. B at 6.) In April 2014, the parties entered into another Resolution Agreement whereby: (i) Defendant would provide 15 hours a week of at-home SETSS therapy for a year, starting April 23, 2014, and (ii) by April 1, 2015, additional at-home SETSS services through April 23, 2016, would be considered. (Def. Moving Memo. of Law,[5] Decl. of Lyssa M. Sampson, Ex. A at ¶ 4.)

On June 11, 2014, Plaintiff filed the instant lawsuit. On March 4, 2015, the parties entered into another Resolution Agreement whereby: (i) on or before March 30, 2015, the Central Based Support Team ("CBST") would identify an "appropriate" private school program for T.T., and (ii) 15 hours per week of at-home SETSS services would be provided for a year starting April 24, 2015. (Def.'s Reply Memo. of Law in Support of its Motion to Dismiss, Decl. of Lyssa M. Sampson, Esq., Ex. A at ¶ 1.) Thus, T.T. was continually receiving ABA therapy at home from July 5, 2013, through April 24, 2016. The CBST subsequently identified a placement for T.T. at the Association for Metroarea Autistic Children ("AMAC"), starting July 1, 2015. (*Id.* at ¶ 5.) The AMAC uses the ABA method.[6]

The IEP commencing July 6, 2015 provided for 15 hours of at-home SETSS services, "as per previous impartial hearing and resolution agreement." (Obj. to Report and Recommendations Dated March 14, 2016 ("Pl.'s Obj."), Ex. C at 4, ECF No. 50.) The IEP also provided for T.T. to attend the AMAC school. (*Id.* at 10.) On March 29, 2016, Plaintiff was notified that the at-home therapy was scheduled to end on April 24, 2016. (Pl.'s Obj. ¶ 3, Ex.

---

[5]    "Def. Moving Memo. of Law" refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss.

[6]    http://www.privateschoolreview.com/the-association-for-metro-area-autistic-children-profile; http://amac.org.

A.) On April 4, 2016, Plaintiff initiated an administrative proceeding seeking, *inter alia*,

"[c]larification" as to when the at-home therapy provided for in the July 6, 2015 IEP was to end.

(Memo. of Law in Resp. to Pl.'s Obj. to the Report and Recommendation of Judge Orenstein,

Decl. of Lesley Berson Mbaye, Ex. A.) Neither party has informed the Court whether T.T. is

still receiving one-on-one therapy at home.

## III.    PROCEDURAL HISTORY

In the Complaint, Plaintiff challenged the IEP, without specifying which IEP, for

"fail[ing] to consider a 1:1 ratio placement classroom, despite overwhelming evidence that

Terence required one, and instead placed Terence in a 6:1:1 classroom," thereby denying T:T a

FAPE. (Compl. ¶ 6.) He also challenged the IHO and SRO denials of his request to place T.T.

in the BAC and to increase the therapy hours to 15 hours a week. (*Id.* at ¶¶ 30-2.) Plaintiff seeks

the following relief:

"(a)    an independent review and consideration of the underlying administrative record and any
        additional evidence this Court may find appropriate to consider;

(b)     de novo review of the IHO and the SRO's decisions;

(c)     a determination that the defendant failed to meet its evidentiary burden to prove that it
        provided to the plaintiff a FAPE ... ;

(d)     a determination that the Brooklyn Autism Center, the educational program requested by
        the parents is reasonably calculated to provide an educational benefit ...;

(e)     a determination that the equities favored [T.T.] and his parents ...;

(f)     an award of compensatory ABA therapy;

(g)     an order granting plaintiffs leave to file a fee application pursuant to the fee-shifting
        provisions of 20 U.S.C. §1400 et seq. (IDEA), and 20 U.S.C. §§ 1415."

(*Id.* at ¶ 33.)

On April 22, 2015, Defendant moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (h)(3) for lack of subject-matter jurisdiction. (Def. Moving Memo. of Law at Point II.A., 21-23.) Defendant argued that Plaintiff's claims for declaratory relief and "compensatory ABA therapy" are moot because Defendant has agreed to place T.T. in private school and has been providing T.T. with 15 hours-a-week of at-home therapy. (*Id.*) In response, Plaintiff argued that because "[f]or three years the DOE did not consider or provide a 1:1 instruction ratio classroom placement[]" or place T.T. in the BAC or "a comparable unapproved school[,]" rather placing T.T. in a 6:1:1 public classroom, that the case is not moot. (Pl. Opp. Memo. of Law at Point I, 15-6.) "The case or controversy is whether Brooklyn Autism Center or a comparable ABA school providing 1:1 instruction, is appropriate." (*Id.* at 16.) As to compensatory ABA therapy, Plaintiff argued why it is a meritorious claim but did not address Defendant's mootness argument. (*Id.* at Point II, 19-23.)

On June 23, 2015, Plaintiff informed the Court that T.T. was not offered placement at the BAC for the upcoming school year. (ECF No. 36.) On July 3, 2015, Plaintiff cross-moved seeking to amend the Complaint by withdrawing the claim for a declaratory judgment that the BAC is an appropriate placement and instead, seeking an injunction under Federal Rule of Civil Procedure 65 ordering Defendant to provide 1,000 hours of ABA therapy to compensate T.T. for the year of education that he "lost" by attending public school. (Memo. of Law in Support of Pl.'s Cross-Mot. for an Award of Compensatory Education as a Remedy for the School District's Denial of an Appropriate Education 1, ECF 42-3.)

## IV.    JUDGE ORENSTEIN'S R&R

Judge Orenstein reviewed the facts as ascertained from the Complaint, the exhibits that were incorporated by reference, and the sealed record of the administrative proceedings. First, Judge Orenstein recommended finding that Plaintiff's claim for declaratory relief is moot because Plaintiff seeks a declaration that FAPE was not offered for a school year that has ended - 2013-2014. Therefore, any declaration or other declaratory relief concerning that school year "will afford no meaningful relief." (*Id.* at 8.) Judge Orenstein also found that "there is no reasonable expectation that the IEP at issue will be repeated" because in 2015, Defendant agreed to move T.T. into a private school. Judge Orenstein concluded, therefore, that Plaintiff's concern that Defendant will revert back to the older IEP provisions is "mere speculation" that "does not suffice to establish the existence of a live case or controversy." (*Id.* at 9.) The Judge also noted that "if the DOE were to issue such a regressive IEP" and Plaintiff chose to challenge it in federal court, Defendant could not make a mootness argument because it would no longer be mere speculation that the prior IEP would be repeated. (*Id.* at 9 n.4.)

Judge Orenstein also recommended denial of Plaintiff's claim for compensatory education. "Compensatory education is prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v. New York City Dep't. of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008) (internal quotation marks and citation omitted). Judge Orenstein concluded that the issue need not be decided because the "current IEP" called for 15 hours a week of ABA therapy, which is the very relief that Plaintiff seeks for the 2013-14 school year in

8

the instant lawsuit.[7] (*Id.* at 9.) The Judge noted "that the fact that [compensatory education] is prospective and equitable in nature does not preclude the request from being moot ...." (*Id.*)

Judge Orenstein also recommended rejection of Plaintiff's claim for attorneys' fees because although Plaintiff is an attorney, he has brought this action *pro se*, and irrespective of that fact has not prevailed here. (*Id.* at 10.) The Judge also recommended denial of Plaintiff's cross-motion seeking to amend the Complaint by seeking injunctive relief of 1,000 hours of at-home therapy. (*Id.* at 11-13.) Plaintiff has not clarified whether he seeks a total of 1,000 hours or 1,000 hours in addition to the 15 hours a week that T.T. was currently receiving. Judge Orenstein concluded that if Plaintiff seeks a total of 1,000 hours, the proposed amendment is moot because Defendant has already provided for that increase "over the 2014 and 2015 school years." (*Id.* at 11.)

Alternatively, if Plaintiff is seeking an additional 1,000 hours on top of the 15 hours per week, Judge Orenstein concluded that "the proposed amendment is futile" because, even assuming that the proposed Amended Complaint is "read liberally to establish a substantial likelihood of success on the merits and (even more charitably, under the circumstances) that mandating the additional compensatory therapy is in the public interest," there is nothing in the record showing that T.T. will suffer "irreparable harm" if the additional 1,000 hours are not provided. (*Id.* at 12.) The Judge noted that his conclusion was based not just on the proposed allegations but also on the "extensive factual record developed in prior administrative proceedings ...." (*Id.*) Judge Orenstein further concluded that "it is not even clear that it would be practical to give him still more therapy for five hours a day." (*Id.*) As Defendant noted, that

---

[7]    In seeking "compensatory ABA therapy" Plaintiff did not specify in the Complaint the number of hours that he seeks. Defendant and Judge Orenstein correctly noted that it is 15 hours because that is the amount at issue in the SRO decision that Plaintiff is challenging in the instant lawsuit. (Compl. ¶¶ 27, 28, 33; PX A at 1.)

would mean T.T. would be schooled entirely at home for eight hours a day. (Memo. of Law in Opp. to Pl.'s Mot. to Amend the Compl. 20, ECF No. 45.) The Judge concluded that "the proposed Amended Complaint would be futile, as would any good faith attempt to further refine that proposed pleading." (R&R 13.)

## V.    PLAINTIFF'S OBJECTIONS TO THE R&R

On April 9, 2016, Plaintiff filed his objections to the R&R. But Plaintiff did not object to or disagree with any particular portion of the R&R. He also asserted two new legal claims in the Objections.

Plaintiff first reported on "a new development" – that the one-on-one therapy would end on April 24, 2016 and that "a student's right of pendency pending proceedings pursuant to 20 U.S.C. § 1415(j); 34 C.F.R. § 518(a) (2007); N.Y. Educ. Law 4404(40(a)" was not recognized. (Pl.'s Obj. ¶ 4.) He also stated that the then-current IEP called for 1:1 instruction and that "[a] Resolution Agreement had granted the services until April 24, 2016." (*Id.* at ¶ 6.)

Next, under the heading "At Bar, the challenged IEP for 2013 did not provide sufficient 1:1 instruction[,]" Plaintiff repeated allegations from the Complaint that according to a psychologist, T.T. made "a big improvement" when he received 20 hours of 1:1 therapy in 2010 and 2011, that a developmental behavioral pediatrician found that T.T. had progressed well in 2012 while attending a private school, that he had regressed while attending a "six child" public classroom, that the 2013 IEP did not provide enough 1:1 instruction, and that from 2014 through 2015, he was provided 15 hours a week of 1:1 therapy. (*Id.* at ¶¶ 7-10.)

Then, for the first time in this litigation, Plaintiff argued for "one additional hour of 1:1 instruction per day," from 15 hours to 20 hours a week "[a]s compensatory award for a loss of education[.]" (*Id.* at ¶¶ 11-13, 21-22.)

10

Plaintiff followed with his legal arguments under the heading "Discussion[.]" He started by noting that "[t]he March 14, 2016 Report and Recommendations raises an issue of law under the Constitution of the United States." (*Id.* at ¶ 13.) This is the only time that Plaintiff's objections referred to or discussed any portion of the R&R. Plaintiff next discussed that a case becomes moot when it no longer presents a live controversy. (*Id.*) He argued that because "[t]he challenged conduct is recurring[,]" it is "capable of repetition, yet evading review." (*Id.* at ¶ 17.) Plaintiff does not clarify whether "[t]he challenged conduct" refers to his claim for private school placement or compensatory ABA therapy.

Next, under subheading "A. This case presents an exception to the mootness doctrine," Plaintiff argued that:

> The duration of T.T.'s 2013 IEP was too short to be fully litigated either before its scheduled expiration or by when the Department issued the 2014 IEP providing the same classroom. The Department has consistently pursued the position that at-home services are not necessary for T.T. to receive a FAPE. Parents have a reasonable expectation of confronting this controversy every year that T.T. is eligible for public education.

(*Id.* at ¶ 18.) Under subheading "B. The Department is subjecting T.T. to the same action once again[,]" Plaintiff argued that because the parties have been litigating the 1:1 instruction issue since September 2012, that "[t]here is a recurring case or controversy." (*Id.* at ¶ 19.) Again, Plaintiff did not clarify whether the "1:1 instruction" refers to in-school or at-home services.

Plaintiff's submission ends with two new legal arguments. First, that Defendant violated the IDEA's pendency provision. (*Id.* at ¶ 20.) Second, that Plaintiff wants to increase his claim for compensatory education to 20 hours a week. (*Id.* at ¶¶ 21-22.) Plaintiff concluded by arguing that "T.T. changed schools. The same problems persist now as in the challenged IEP for 2013[,]" but failed to provide any basis for this argument. (*Id.* at ¶ 24.)

## VI.    DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS

In response, Defendant argues that: (i) Plaintiff fails to object to any specific portion of the R&R and, therefore, the Court should review the R&R only for clear error, and no such error was made; (ii) that no new IEP has been developed for T.T. and, therefore, Judge Orenstein's recommendation that it is speculative that this issue is "capable of repetition, yet evading review" should be adopted; and (iii) as to Plaintiff's pendency argument, "it is questionable whether Plaintiff may assert this claim for the first time in his Objections to the Report and Recommendation[,]" and that, nonetheless, Plaintiff must first exhaust administrative review of this claim before raising it in a civil suit, which administrative proceeding Plaintiff already commenced on April 4, 2016. (Memo. of Law in Resp. to Pl.'s Obj. to the Report and Recommendation of Judge Orenstein, ECF No. 52.)

Defendant attached Plaintiff's April 4, 2016 due process complaint. (Decl. of Lesley Berson Mbaye ¶ 3, Ex. A, ECF No. 53.)  In it, Plaintiff raised the two claims that he newly raised in his Objections.  Specifically, Plaintiff "invoke[d]" the IDEA's pendency provision and sought an increase in compensatory therapy from 15 hours to 20 hours a week. (*Id.* at Ex. A, 1-3.)  He also argued that the July 7, 2015 IEP "did not intend for Terence's [at-home therapy] to terminate before the end of the IEP on June 20, 2016" and sought "clarification" on the end date. (*Id.* at 1, 3.)

## VII.    SUBSEQUENT PROCEDURAL HISTORY

On May 6, 2016, Plaintiff filed a copy of a letter that he wrote to Defendant regarding a possible settlement offer concerning the April 2016 administrative proceedings. (ECF No. 54.) On May 9, 2016, Defendant responded with its own letter to the Court in which it noted that in this litigation, "the parties have exhausted settlement attempts." (ECF No. 55.)

In response to Defendant's May 9th letter, Plaintiff filed the Declaration of Geza Toth Concerning a Persistent Recurring Problem. (ECF No. 56.) In his Declaration, Plaintiff stated that Defendant's response to his Objections failed to include the documents that Plaintiff attached to his April 4, 2016 due process complaint which in sum included reports from "experts." (*Id.* at ¶ 3.) He further argued that "[f]rom December, 2012 until the present, the Department has relied upon administrative employees, or persons without special training in autism[,]" that "[p]rior to the Department's termination of T.T.'s 1:1 home based instruction on December 13, 2012 and on April 24, 2016, the Department failed to assess T.T.'s individual needs[,]" [t]he failure to consider 1:1 teaching ratio denied T.T. a free and appropriate public education[,]" and that "[b]etween the Defendant and T.T.s parents, from 2012 until the present, a persistent, repetitive dispute has recurred concerning T.T.'s need for 1:1 instruction." (ECF No. 56 at ¶¶ 5-7.)

## DISCUSSION

Under 28 U.S.C. § 636, a district court may refer a "pretrial matter" to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1). "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings." FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). A proper objection requires reference to a specific portion of the report and recommendation. *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citation omitted); *Williams v. Woodhull Med. And Mental Health Ctr.*, 891 F.Supp.2d 301, 310 (E.D.N.Y. 2012). "The objections of parties appearing *pro se* are generally accorded leniency and should be construed to raise the strongest arguments that they suggest.... Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the

magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C) (a district judge is to make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). But "[r]eviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). "The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *McCarthy v. Manson*, 554 F. Supp. 1275, 1286 (D.Conn. 1982), *aff'd*, 714 F.2d 234 (2d Cir. 1983) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 (Former 5th Cir. 1982) (en banc)) (footnote omitted). "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F.Supp. 380, 382 (W.D.N.Y. 1992). Moreover, "[w]hile 28 U.S.C. § 636(b)(1) grants district courts discretion to consider additional evidence after a magistrate judge has issued her report, ... a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate ...." *Ortiz*, 558 F. Supp. 2d at 451 (internal quotation marks and citations omitted); *see also In re: Madison Bentley Assoc., LLC*, 516 B.R. 724, 731 n.21 (S.D.N.Y. 2014).

After the review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3). As to those portions of a report and recommendation to which no objection has been addressed, the district court is not required to review the magistrate judge's factual or legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). A district court "may reconsider any" portion of an R&R that "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

## A.    UN-OBJECTED TO RECOMMENDATIONS

No objections have been filed to the portions of the R&R recommending dismissal of Plaintiff's claim for attorneys' fees and denial of Plaintiff's motion to amend the Complaint. This Court has reviewed the record and Judge Orenstein's R&R for clear error and found none. Therefore, the Court adopts those portions of the R&R and denies Plaintiff's claim for attorneys' fees and Plaintiff's motion to amend the Complaint by removing his claim for declaratory relief that BAC is an appropriate placement and instead, seeking an injunction under Federal Rule of Civil Procedure 65 ordering Defendant to provide 1,000 hours of ABA therapy.

## B.    PLAINTIFF'S OBJECTIONS DO NOT WARRANT *DE NOVO* REVIEW

Plaintiff has not objected to any portion of the R&R. Rather, Plaintiff merely states the following: "The March 14, 2016 Report and Recommendations raises an issue of law under the Constitution of the United States." (Pl.'s Obj. ¶ 13.) Plaintiff then discusses that the United States Constitution limits a district court's jurisdiction to cases that present a live controversy. (*Id.*) But reiterating that the R&R discusses subject-matter jurisdiction does not constitute an objection to any of the recommendations therein.

Although Plaintiff is proceeding *pro se*, he is an attorney. Plaintiff has also previously filed and litigated another IDEA case in this jurisdiction. *Toth v. New York City Dep't of Educ.*, 7-cv-03239-SLT-JO (E.D.N.Y.). Moreover, even *pro se* objections need to be "clearly aimed at particular findings in the magistrate's proposal ...." *DiPilato*, 662 F.Supp.2d at 340. Therefore, the Court need not liberally construe Plaintiff's objections. *See e.g., Zimmelman v. Teachers' Retirement Sys. of the City of New York*, No. 08 Civ. 6958, 2010 U.S. Dist. LEXIS 50039, at *9 (S.D.N.Y. May 20, 2010) (*pro se*'s objections did not warrant *de novo* review for "do[ing] little more than recycl[ing] the same ... arguments" made in front of the magistrate judge).

Without objecting to any portion of the R&R, Plaintiff argues that his claims concerning "1:1 instruction" and "at-home services" are not moot because T.T.'s parents expect to confront litigating these issues every year. Even if Plaintiff's arguments can be construed as a proper objection to certain portions of the R&R, they would not be subject to *de novo* review. First, the arguments that Plaintiff made in his Objections concerning his claim for "1:1 instruction" are the same arguments that he presented to Judge Orenstein in opposing Defendant's motion to dismiss the Complaint. Accordingly, the objections do not merit *de novo* review. *Ortiz*, 558 F.Supp.2d at 451 ("Petitioner's objections largely reiterate the arguments made to, and rejected by, Judge Eaton.... Thus, the Court is only obliged to review the Report for clear error"). "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Camardo*, 806 F.Supp. at 382. Second, in opposing Defendant's motion to dismiss before the R&R was issued, Plaintiff could have but chose not to argue that his claim for compensatory at-home ABA therapy is not moot. Therefore, making the argument in his Objections fails to merit *de novo* review. *United States Fidelity and Guaranty Co. v. J. United Elec. Contracting Corp.*, 62 F.Supp.2d 915, 917-18 (E.D.N.Y. 1999) (rejected

defendant's objection to certain of the magistrate judge's "factual findings on the basis of a

newly submitted affidavit and purported copies of documents" where the defendant failed to

offer good justification for not offering the same to the magistrate judge).

The Court should review the R&R for clear error only. *Camardo*, 806 F.Supp. at 382

("Defendant ... attempted to take a second bite when it filed objections" by "merely submit[ting]

a revised version of the same argument it presented to the Magistrate Judge").  Having done so,

the Court finds no clear error and adopts the portions of the R&R recommending a finding that

this Court lacks subject-matter jurisdiction because Plaintiff's claims for declaratory relief and

compensatory ABA therapy are moot.

Even if Plaintiff had properly objected to the R&R's recommendations concerning

Plaintiff's claims for declaratory relief and compensatory ABA therapy, after a *de novo* review

the Court would reject Plaintiff's objections.

## C.    EVEN UNDER A *DE NOVO* REVIEW, THE COURT ADOPTS THE RECOMMENDATIONS THAT PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF AND COMPENSATORY EDUCATION ARE MOOT

Defendant moves to dismiss the Complaint under Rules 12(b)(1) and (h)(3) for lack of

subject-matter jurisdiction on the grounds that Plaintiff's claims are moot.  FED. R. CIV. P.

12(b)(1), (h)(3).  "The federal courts are courts of limited jurisdiction, their powers

circumscribed at their most basic level by the terms of Article III of the Constitution, which

states that they may hear only 'Cases' or 'Controversies.'"  *Russman v. Bd. of Educ. of Enlarged

City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001) (citing U.S. Const. art. III,

§ 2, cl. 1).  "[A]t all times, the dispute before the court must be real and live, not feigned,

academic, or conjectural." *Id.*  If a live controversy no longer exists, the case becomes moot and

a district court no longer "has subject-matter jurisdiction because any ruling or judgment issued

without [a live controversy] would be hypothetical in nature." *F.O. v. New York City Dep't of Educ.*, 899 F. Supp. 2d 251, 254 (S.D.N.Y. 2012). "[A] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Vill. of W. Hampton Dunes v. New York*, 89 F.Supp.3d 433, 441 (E.D.N.Y. 2015) (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)) (internal quotation marks omitted). "[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* (citing *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)) (internal quotation marks omitted).

"Mootness is a recurring phenomenon in students' suits to vindicate constitutional rights associated with the conditions of their education: .... As the student's interest evaporates, so does the requisite case or controversy." *Russman*, 260 F.3d at 119. "'A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur.'" *F.O.*, 899 F. Supp. 2d at 254 (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998)).

In *Stellato v. Board of Education of the Ellenville Central School District*, the Court held that the plaintiffs' claim for declaratory and injunctive relief was moot because after the lawsuit was filed, the defendant conducted the very evaluation that the plaintiff wanted conducted, where the plaintiffs wanted "the court to declare that the school district did indeed unduly delay" the evaluation "in violation of IDEA" and "an order forcing the school district" to conduct the evaluation. 842 F. Supp. 1512, 1516 (N.D.N.Y. 1994). Similarly in *Browell v. Lemahieu*, the Court found that "[t]here is no effective relief that this Court can grant to Plaintiff[]" where the defendant had already provided the plaintiff with the compensatory relief that the plaintiff sought

- summer school to make up for an eight-week educational interruption. 127 F. Supp. 2d 1117, 1126-27 (D. Ha. 2000).

Similarly here, under uncontested facts, at least until April 24, 2016 T.T. has been receiving 15 hours of at-home therapy and that this is the very compensatory education that Plaintiff sought in the Complaint for the 2013-14 school year. Defendant has been providing such therapy for the past three years. The March 2013 Resolution Agreement provided for ten hours a week through January 31, 2014. (PX E.) Defendant increased that amount, in two other Resolution Agreements, to fifteen hours a week from April 24, 2014, through April 24, 2016. (Def. Moving Memo. of Law, Decl. of Lyssa M. Sampson, Ex. A; Def.'s Reply Memo. of Law in Support of its Motion to Dismiss, Decl. of Lyssa M. Sampson, Esq., Ex. A.) The IEP commencing July 6, 2015 also calls for 15 hours of at-home ABA therapy. (Pl.'s Obj., Ex. C at 4.) Moreover, in March 2015, Defendant agreed to move T.T. out of a 6:1:1 public classroom and place him in an appropriate private school program. (Def.'s Reply Memo. of Law in Support of its Motion to Dismiss, Decl. of Lyssa M. Sampson, Esq., Ex. A at ¶ 1.) Consequently, Plaintiff's claim for declaratory relief seeking that T.T. be moved out of a 6:1:1 public classroom and into a private school as well as his claim for compensatory ABA therapy are moot.

An exception to the mootness doctrine is if the challenged conduct is "capable of repetition, yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). But it "applies only in exceptional situations[.]" *Id.* One has to show both that: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again[.]" *Id.* (internal quotation marks and citations omitted). "To create a reasonable

expectation of recurrence, repetition must be more than theoretically possible. Mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence." *Russman*, 260 F.3d at 120 (citations omitted). Indeed, repetition must be "probable." *Deeper Life Christian Fellowship, Inc. v. Thomas Sobol*, 948 F.2d 79, 82 (2d Cir. 1991).

Plaintiff argues that because the parties have disputed the issue of "1:1 instruction" since September 2012 and Defendant "has consistently pursued the position that at-home services are not necessary for T.T. to receive a FAPE," the "[p]arents have a reasonable expectation of confronting this controversy every year ...." (Pl.'s Obj. ¶¶ 18, 19.) Since the first prong of the exception to the mootness doctrine is not in dispute,[8] the Court will limit its discussion to the second prong and determine whether Plaintiff has shown that there is a "reasonable expectation of recurrence" that Plaintiff will continue to dispute Defendant's position on these issues.

In *K.C. v. New York City Education Department*, the Court held that "the possibility that Plaintiffs will initiate another administrative proceeding [to challenge the timeliness of SRO's decisions] appears remote" because the students would begin attending private school at the expense of the department of education. No. 13 Civ. 5910, 2015 U.S. Dist. LEXIS 134043, at *41 (S.D.N.Y. Sept. 30, 2015). Similarly here, where Defendant has agreed for the past three years to provide 15 hours of at-home therapy and placed T.T. in private school, Plaintiff's concern that Defendant will revert back to an IEP that places T.T. in a 6:1:1 public school classroom with decreased at-home ABA therapy is too speculative to demonstrate "reasonable

---

[8]    Judge Orenstein concluded that the first prong of demonstrating that an issue is "capable of repetition, yet evading review" is "easily satisfied" because "judicial review of an IEP invariably takes longer than the duration of a school year to complete ...." (R&R 8, citing *M.R. v. S. Orangetown Cent. Sch. Dist.*, No. 10-CV-1800, 2011 U.S. Dist. LEXIS 145177, at *14 (S.D.N.Y. Sept. 30, 2015)). Plaintiff raised no objection to this conclusion.

recurrence[,]" thereby failing to rise to the level of a "live case or controversy." *Van Wie v. Pataki*, 267 F.3d 109, 115 (2d Cir. 2001) (dismissing the case as moot because the second prong was not met).

Plaintiff's reliance on the ruling in *Student X v. New York City Department of Education* is misplaced because there, the school "vigorously defended" the IEP in the administrative proceedings and refused to offer the services at issue. No. 07-CV-2316, 2008 U.S. Dist. LEXIS 88163, at *41 (E.D.N.Y. Oct. 30, 2008). But here, as Plaintiff himself has repeatedly noted, Defendant offered no defense of the challenged IEP during the administrative process. And more importantly, Defendant has on three occasions agreed to provide at-home therapy. Plaintiff's reliance on *Board of Education of the Hendrick Hudson Central School District v. Rowley* is also misplaced because, again, that case has no history of the school providing the very relief that the plaintiff sought in that case. 458 U.S. 176 (1982).

Plaintiff raises that fact that on March 29, 2016, he received notification that T.T.'s at-home therapy was scheduled to end on April 24, 2016. (Pl.'s Obj. ¶¶ 3, 4.) But this fact does not change the Court's ruling that Plaintiff's claim for compensatory ABA therapy is moot. Plaintiff and Defendant agreed on the March 4, 2015 Resolution Agreement which called for the end of such services on April 24, 2016; the July 6, 2015 IEP echoed that end date in also providing for this therapy. (Def.'s Reply Memo. of Law in Support of its Motion to Dismiss, Decl. of Lyssa M. Sampson, Esq., Ex. A at ¶ 1; Pl.'s Obj., Ex. C at 4.) As IEPs are to be reviewed annually (20 U.S.C. § 1414(d)(2-4)), they will call for services only for the next 12 months. Plaintiff has not argued that the most current IEP does not provide for 15 hours of at-home therapy.

Moreover, neither the Court nor Plaintiff can predict whether Plaintiff will challenge another IEP. The IEPs are to be reviewed at least annually and revised to reflect the child's

needs. 20 U.S.C. § 1414(d)(2-4). The issue under consideration under the IDEA is not the at-home therapy, but whether Defendant is providing T.T. with a FAPE, an inquiry which requires looking both at his school placement and the services provided. *Heather S. v. Wisconsin*, 125 F.3d 1045, 1055 (7th Cir. 1997) ("whether Heather was described as cognitively disabled, other health impaired, or learning disabled is all beside the point. The IDEA concerns itself not with labels, but with whether a student is receiving a free and appropriate education. A disabled child's individual education plan must be tailored to the unique needs of that particular child"); *Patskin v. Bd. of Ed. of Webster Centr. Sch. Distr.*, 583 F.Supp.2d 422, 429 (W.D.N.Y. 2008) ("Whether NHS is an appropriate placement for S.P. is not, however, the relevant issue. The relevant controversy is whether the particular IEP with which S.P. was provided for the 2006-2007 school year was an appropriate placement ..."). Therefore, Plaintiff could disagree on the number of hours of at-home ABA therapy while T.T. is placed in an appropriate private school without being denied a FAPE.

In *B.J.S. v. State Educ. Dep't/Univ. of the State of N.Y.*, the Court struck down an argument that is similar to the one that Plaintiff is making here. The Court held that "the fact that Plaintiff has repeatedly challenged N.S.'s IEP for each school year since the 2002-2003 academic year, such that N.S. has remained in a pendency placement since 2003," fails to meet the "requisite 'reasonable expectation' of repetition ...." 815 F.Supp.2d 601, 612-13 (W.D.N.Y. 2011) (the defendant's motion seeking dismissal of claims as moot was unopposed). The Court reasoned that "[a] finding that Plaintiff has repeatedly challenged N.S.'s IEP would be based on a presumption that Plaintiff will necessarily commence an administrative challenge to each IEP developed for N.S., regardless of what is recommended by the CSE, an assertion the Second Circuit has explicitly rejected ...." *Id.* (citing *Lillbask v. Conn. Dep't. of Educ.*, 397 F.3d 77, 86

22

(2d Cir. 2005) and "observing the Second Circuit requires a probability, rather than a possibility, that repetition will occur").

For all these reasons, the Court rejects Plaintiff's arguments that there is a reasonable expectation of recurrence that Plaintiff will again dispute T.T.'s school placement and the provision of 15 hours of at-home ABA therapy.

## D. REVIEW OF PLAINTIFF'S NEW CLAIMS IS BARRED

Plaintiff improperly chose to wait until Judge Orenstein issued the R&R to seek, for the first time, an increase from 15 to 20 hours a week of compensatory ABA therapy. (Pl.'s Obj. ¶¶ 11, 12, 21, 22.) "[A] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate[,]"*Ortiz*, 558 F. Supp. 2d at 451, especially if, as is the case here, "letting Plaintiff belatedly raise this theory would thwart the efficiencies gained through the Magistrates Act and permit Plaintiff to change tactics after the issuance of a report and recommendation." *Stock Market Recovery Consultants Inc.*, 13-CV-193, 2015 U.S. Dist. LEXIS 132786, at *8 (internal quotation marks and citation omitted); *see In re: Madison Bentley Assoc., LLC*, 516 B.R. 724, 731 n.21 (S.D.N.Y. 2014) ("that argument was raised for the first time in the trustee's objections [to the bankruptcy court's proposed findings] and the Court thus declines to entertain it") (citing *Ortiz*, 558 F. Supp. 2d at 451).

Determining whether to grant the increase would entail determining whether Defendant "depriv[ed]" T.T. of a FAPE such that compensatory ABA therapy is appropriate relief and then determining whether 20 hours is the appropriate amount of such relief. *Somoza*, 538 F.3d at 109 n.2. Accordingly, although Plaintiff sought compensatory ABA therapy in the Complaint, the Court construes this request in Plaintiff's Objections as a new claim. Plaintiff provides no explanation for why he waited until after the R&R was issued to raise this claim. Accordingly,

the Court will not rule on it. *Ortiz*, 558 F. Supp. 2d at 451; *In re: Madison Bentley Assoc., LLC*, 516 B.R. at 731 n.21; *see e.g., Kennedy v. Adamo*, 02-CV-1776, 2006 U.S. Dist. LEXIS 93900, at * 1 (E.D.N.Y. Sept. 1, 2006) (even in a *de novo* review of a party's specific objections, the court will not "consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance") (citation and internal quotation marks omitted), *aff'd*, 323 Fed. Appx. 34 (2d Cir. 2009).

Even if Plaintiff had sought 20 hours a week of compensatory ABA therapy in the Complaint, the Court's review is barred because Plaintiff has not yet exhausted administrative review of the claim. 20 U.S.C. § 1415(i)(2)(A); *see Cave*, 514 F.3d at 245 (remanded case and directed the district court to dismiss plaintiffs' "complaint in its entirety for lack of subject-matter jurisdiction due to plaintiffs-appellants' failure to exhaust the administrative remedies available to them under the IDEA"); *see e.g., R.C. v. Carmel Centr. Sch. Dist.*, 06 Civ. 5495, 2007 U.S. Dist. LEXIS 43697, at *14 (S.D.N.Y. June 13, 2007) ("this Court is construed to deny Plaintiffs' request for compensatory education for failure to exhaust administrative remedies"). Plaintiff only began administrative review of the claim on April 4, 2016, well after he filed the instant lawsuit on June 11, 2014. (Memo. of Law in Resp. to Pl.'s Obj. to the Report and Recommendation of Judge Orenstein, Decl. of Lesley Berson Mbaye, Ex. A at 3.)

"It is well-established that a plaintiff must plead her claims in her complaint." *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 884 (S.D.N.Y. 2013) (citing FED. R. CIV. P. 8(a)(2), *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 174 n.4 (2d Cir. 2015) ("[o]n appeal, the Plaintiffs attempt to bring new claims .... As the Plaintiffs failed to plead these claims in the amended complaint, we do not consider them"). The Court will not rule on another new claim that Plaintiff raised in his

24

Objections - that Defendant violated the pendency provision because Plaintiff was notified that the at-home therapy was scheduled to end on April 24, 2016. (Pl.'s Obj. ¶¶ 3, 20.) *See Ortiz*, 558 F. Supp. 2d at 451; *In re: Madison Bentley Assoc., LLC*, 516 B.R. at 731 n.21. Plaintiff should have sought to amend the Complaint, as he has already done on another claim, or should file a new complaint to allege a new violation by Defendant.

## **CONCLUSION**

The Court adopts Judge Orenstein's R&R in its entirety. (ECF No. 48.) Defendant's motion to dismiss the Complaint for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and (h)(3) is granted (ECF No. 37). Plaintiff's cross-motion to amend the Complaint is denied (ECF No. 42). The Complaint is dismissed (ECF No. 1). The Clerk of Court is directed to close this case.

**SO ORDERED.**

/s/ *Sandra L. Townes*

SANDRA L. TOWNES
United States District Judge

Dated: January 5, 2017
Brooklyn, New York